# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**CLAUDIA BALCERO GIRALDO, et al.,**

**Plaintiffs,**

v.

**DRUMMOND COMPANY INC., et al.,**

**Defendants.**

**Case No. 1:10-mc-00764 (JDB)**

## MEMORANDUM OPINION

Plaintiffs seek to compel the testimony of a third-party, the former President of Colombia Alvaro Uribe ("respondent"), in connection with pending litigation in the United States District Court for the Northern District of Alabama.  See Giraldo v. Drummond Co. Inc., 7:09-cv-1041 (N.D. Al.).  At this Court's request, the United States has submitted a Statement of Interest in this matter and suggests that respondent is immune from testifying to the extent that plaintiffs "seek information (i) relating to acts taken in his official capacity as a government official; or (ii) obtained in his official capacity as a government official."  United States' Statement of Interest ("SOI") [Docket Entry 13] at 1.  Plaintiffs primarily argue that they can compel respondent's testimony because they only seek information related to illegal actions, and illegal actions are by definition not official actions.  For the reasons set forth below, this Court will deny plaintiffs' motion to compel respondent's testimony.

## BACKGROUND

"Plaintiffs are all lawful legal representatives for and . . . beneficiaries of the 113 decedents . . . who were [allegedly] executed by the Juan Andres Alvarez Front of the Northern

-1-

Block of the United Self Defense Forces of Colombia ("AUC")." Second Am. Compl. (N.D. Al. No 7:09-cv-1041) at 1-2. In the underlying suit, plaintiffs "bring claims for war crimes, extrajudicial killings and crimes against humanity under the Alien Tort Statute ("ATS") and for extrajudicial killing under the Torture Victim Protection Act ("TVPA"), 28 U.S.C. § 1350," against Drummond Company, Inc., one of its wholly owned subsidiaries, and three of its employees. Id. at 2. In this Court, plaintiffs seek to "compel non-party [respondent] to appear for a deposition." Pls.' Mot. to Compel [Docket Entry 1] at 1.

Specifically, plaintiffs seek to depose former President Uribe regarding his knowledge of and relationship with the AUC and Drummond. Pls.' Resp. to the SOI ("Pls.' Resp.") [Docket Entry 16] at 6. At all relevant times, however, respondent was serving as a government official, either as President of Colombia or as Governor of Antioquia. See id. Primarily, plaintiffs seek to depose him regarding his actions during his presidency, including his alleged "illegal collaboration with and support of the AUC"; "cooperation with illegal drug smuggling"; "use of the Columbian military to assist the AUC[]"; "targeting [of] some of [p]laintiffs' decedents for execution"; and "acceptance of payments from Drummond in exchange for illegal services performed by the Colombian military." Id. Plaintiffs also seek to depose respondent regarding his role, while governor of Antioquia, "in helping to start the [AUC]." Id.; Pls.' Mot. to Compel. Ex. H, at 3.

Following respondent's refusal to appear at a scheduled deposition, plaintiffs filed a motion with this Court to compel his testimony. The Court in turn requested a Statement of Interest from the United States. The United States "suggests that former President Uribe enjoys residual immunity from this Court's jurisdiction insofar as Plaintiffs seek information (i) relating to acts taken in his official capacity as a government official; or (ii) obtained in his official

capacity as a government official." SOI at 1. Although plaintiffs do not contest that this Court

should follow the United States' suggestion of immunity, they argue that the information they

seek is consistent with the government's suggestion because only lawful acts are official acts, and

they only seek testimony related to respondent's "illegal acts," which "are not within official

immunity." Pls.' Resp. 1.

## DISCUSSION

The Supreme Court has recently explained that foreign official immunity is governed by

common law. See Samantar v. Yousuf, 130 S. Ct. 2278 (2010). According to the common law

of foreign official immunity, immunity is determined through "a two-step procedure." Id. at

2284. The official can "request a suggestion of immunity from the State Department." Id.

(internal quotation marks omitted). If the State Department grants the request, the "district court

surrenders its jurisdiction." Id. If, however, the State Department takes no action, "a district

court ha[s] authority to decide for itself whether all the requisites for such immunity exist[]." Id.

(internal quotation marks omitted).

In this case, the State Department has granted respondent's request for a suggestion of

immunity and suggests that former President Uribe enjoys residual immunity as to information

relating to acts taken or obtained in his official capacity as a government official. SOI at 1.

Plaintiffs do not take issue with this standard for determining respondent's immunity. Rather,

they contend that they seek "to depose [respondent] only with respect to events that occurred

before he was President or that constitute illegal acts that are not within his official immunity."

Pls.' Resp. 1. But although plaintiffs seek information "with respect to events that occurred

before [respondent] was President," that information still relates to information he received and

acts he took in his official capacity as a government official—here, the Governor of Antioquia.

Id.  Moreover, mere allegations of illegality do not serve to render an action unofficial for purposes of foreign official immunity.

The only issue that plaintiffs specifically claim is unrelated to respondent's presidency is "his role, prior to becoming President, in helping to start the [AUC]."  Pls.' Resp. 6.  Elsewhere in their submissions to this Court, however, plaintiffs reveal that any alleged conduct related to "the establishment [of the AUC] in Antioquia" occurred during respondent's time "[a]s governor."  Pls.' Mot. to Compel. Ex. H, at 3.  And, as with all other suggested deposition topics, plaintiffs never claim that such information is unrelated to respondent's service as a government official.  Indeed, plaintiffs readily admit that they only seek to depose respondent about "the relationship between him, his government, and the AUC" because their "claims under the TVPA" require a showing that "the AUC was acting under color of authority of the Colombian government."  Pls.' Resp. 9 & n.4.

Plaintiffs further contend that "illegal acts . . . are not within official immunity."  Pls.' Resp. 1.  But such a rule would eviscerate the protection of foreign official immunity and would contravene federal law on foreign official immunity.  To be clear, plaintiffs do not argue that respondent engaged in garden-variety "crimes . . . in violation of his position and not in pursuance of it."  Jimenez v. Aristeguieta, 311 F.2d 547, 558 (5th Cir. 1962).  Rather, they assert that former President Uribe committed "acts that violate international *jus cogens* human rights norms."[1]  Pls.' Reply in Support of Mot. to Compel [Docket Entry 8] at 18.  Again, plaintiffs seek

---

[1]  A *jus cogens* norm "is a norm accepted and recognized by the international community of states as a whole as a norm from which no derogation is permitted and which can be modified

(continued...)

-4-

to depose respondent in order to show that "the AUC was acting under color of authority of the

Colombian government."  Pls.' Resp. 9, n.4.

The D.C. Circuit has rejected the argument that *jus cogens* violations defeat foreign

official immunity in the context of the Foreign Sovereign Immunities Act ("FSIA").  Prior to the

Supreme Court's recent ruling that foreign official sovereign immunity is governed by the

common law, many courts, including the D.C. Circuit, had found that foreign official immunity

was governed by the FSIA.  In Belhas v. Ya'alon, the D.C. Circuit found that the "FSIA contains

no unenumerated exception [to foreign official immunity] for violations of *jus cogens* norms."

515 F.3d 1279, 1287 (D.C. Cir. 2008).  Because the court decided the issue under the FSIA, that

holding does not squarely govern the issue here regarding the effect of a *jus cogens* violation on

foreign official immunity for purposes of the common law.  But as the Supreme Court noted in

Samantar, rules that appellate courts developed for foreign official immunity under the FSIA

"may be correct as a matter of common-law principles."  Samantar, 130 S.Ct. at 2291 n.17.  And

the D.C. Circuit's reasoning in Belhas is instructive.  The court explained that, without

"something more nearly express" from Congress, it would not adopt a rule that would require

federal courts to "assume jurisdiction over the countless human rights cases that might well be

brought by the victims of all the ruthless military juntas, presidents-for-life, and murderous

dictators of the world, from Idi Amin to Mao Zedong."  515 F.3d at 1287.  As the court observed,

"[s]uch an expansive reading . . . would likely place an enormous strain not only upon our courts

---

[1](...continued)
only by a subsequent norm of general international law having the same character."  Belhas v.
Ya'alon, 515 F.3d 1279, 1286 (D.C. Cir. 2008) (quoting Vienna Convention on the Law of
Treaties art. 53, May 23, 1969, 1155 U.N.T.S. 332).

but, more to the immediate point, upon our country's diplomatic relations with any number of foreign nations." Id. (quoting Princz v. Fed. Repub. of Germany, 26 F.3d 1166, 1174 n.1 (D.C. Cir. 1994)).

Not only would such a rule place a strain upon our courts and our diplomatic relations, but it would also eviscerate any protection that foreign official immunity affords. As Judge Williams explains in his concurrence in Belhas, a *jus cogens* exception "merges the merits of the underlying claim with the issue of immunity." 515 F.3d at 1292-93. As soon as a party alleged a violation of a *jus cogens* norm, a court would have to determine whether such a norm was indeed violated in order to determine immunity— i.e., the merits would be reached. When the foreign official is the defendant, there will effectively be no immunity— a civil action by definition challenges the legality of the official's acts. But as the D.C. Circuit has explained, "sovereign immunity is an immunity from trial and the attendant burdens of litigation, and not just a defense to liability on the merits." Foremost-McKesson, Inc. v. Islamic Republic of Iran, 905 F.2d 438, 443 (D.C. Cir. 1990) (citation omitted). Indeed, both the Second and Seventh circuits have found "[t]he Executive Branch's determination that a foreign leader should be immune from suit even where the leader is accused of acts that violate *jus cogens* norms is established by a suggestion of immunity." Matar v. Dichter,  563 F.3d 9, 15 (2d Cir. 2009) (citing Ye v. Zemin, 383 F.3d 620, 627 (7th Cir. 2004)). Even the Supreme Court has suggested that *jus cogens* violations are still official actions. See Saudi Arabia v. Nelson, 507 U.S. 349, 361 (1993) ("[A] foreign state's exercise of the power of its police[,] . . . however monstrous such abuse undoubtedly may be, . . . [is] peculiarly sovereign in nature.").

Plaintiffs fail to cite any case that holds that allegations of violations of *jus cogens* norms

will defeat foreign official immunity.  The D.C. Circuit has previously distinguished several

cases that plaintiffs cite because those courts "held that the defendant was acting outside the

scope of his authority," unrelated to any *jus cogens* violations.  Belhas, 515 F.3d at 1288.  As to

the remaining cases that plaintiffs cite, several are completely irrelevant, and others discuss

domestic immunity rather than foreign official sovereign immunity, see Al-Quraishi v. Nakhla,

No. 08-1696, 2010 WL 3001986, at *37-38 (D. Md. 2010), or the "discretion" a state has in

committing tortious conduct in the United States for purposes of the FSIA, § 1605(a)(5)(A), see

Letelier v. Republic of Chile, 488 F. Supp. 665 (D.D.C. 1980).  Here, plaintiffs do not provide

any support for a contention that former President Uribe was acting outside his authority.  Rather,

they contend that he acted within his official capacity but illegally, and hence such unlawful acts

were outside the scope of his official duties by definition.  But that position is just what Belhas

and other cases reject.  Accordingly, plaintiffs' allegations of *jus cogens* violations do not defeat

former President Uribe's immunity.

Plaintiffs, then, do not currently seek information unrelated to acts taken or obtained in

respondent's official capacity, but to the extent they were to seek such information, plaintiffs may

not depose respondent until they exhaust other reasonably available means for obtaining the

information.  As the Supreme Court has counseled with respect to foreign litigants generally,

"American courts . . . should exercise special vigilance to protect foreign litigants from the

danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous

position."  Societe Nationale Industrielle Aerospatiale v. United States Dist. Court, 482 U.S. 522,

546 (1987).  In requesting that plaintiffs be required first to pursue alternative avenues to gather

the information they seek, the United States notes that plaintiffs' deposition request raises

important issues regarding "comity concerns, the respect due presidents of friendly states, . . . [and the likelihood that] U.S. practice may influence how foreign courts handle this issue." SOI 6-7.  As the D.C. Circuit has held in such a situation, "[p]rinciples of comity dictate that we accord the same respect to foreign officials as we do to our own." In re Papandreou, 139 F.3d 247, 252 (D.C. Cir. 1998).  And this court has required that in order to depose a former United States President, a plaintiff must demonstrate that his "testimony would be material as tested by a meticulous standard, as well as being necessary in the sense of being a more logical and more persuasive source of evidence than alternatives that might be suggested." United States v. Poindexter, 732 F. Supp. 142, 147 (D.D.C. 1990).  Plaintiffs concede that other individuals "have some information on the main issues" they are pursuing. Pls.' Resp. 9.  And plaintiffs are currently proceeding with the letters rogatory process in an attempt to acquire some of that information. Id. at 8.  The Court agrees with the position of the United States that, although immunity is not available with respect to information relating to acts taken or obtained by former President Uribe outside of his official capacity as a government official, comity and foreign relations interests nonetheless require that all other reasonably available means to acquire such information be exhausted before a deposition is permitted.  Accordingly, to the extent plaintiffs were to seek information unrelated to acts taken or obtained in respondent's official capacity, they must first show that the information is both necessary and unavailable through other means.

## CONCLUSION

For the reasons explained above, the Court will deny plaintiffs' motion to compel the testimony of former President Uribe.  A separate Order accompanies this Memorandum Opinion.

_____/s/_____
JOHN D. BATES
United States District Judge

Dated: <u>September 8, 2011</u>